UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LASHAW O.,<br><br>          Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No.:  24-cv-1461-W-SBC<br><br>**REPORT AND RECOMMENDATION REGARDING REVERSING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

On August 16, 2024, Plaintiff Lashaw O.[1] commenced this action against Defendant Commissioner of Social Security for judicial review under 42 U.S.C. § 405(g) of the denial of her application for supplemental security income benefits. (ECF No. 1.) The Commissioner filed the Administrative Record on October 15, 2024. (ECF No. 8.) Plaintiff filed a Motion to Remand on December 18, 2024. (ECF No. 11.) The Commissioner filed

---

[1]     The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules. *See* S.D. Cal. Civ. R. 7.1(e)(6)(b).

1   a Responsive Brief on January 17, 2025. (ECF No. 13.) Plaintiff filed a Reply Brief on

2   January 26, 2025. (ECF No. 14.)

3          This Report and Recommendation is submitted to the Honorable Thomas J. Whelan,

4   United States District Judge, pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(d).

5   For the following reasons, the Court recommends that the final decision of the

6   Commissioner be **REVERSED**, and the case **REMANDED** for further proceedings.

## I.    BACKGROUND

**A.    <u>Factual and Procedural History</u>**

9          Plaintiff was born in 1971 and last worked in 2005 as a sign flipper. (AR 231, 310.)[2]

10  She has a history of two significant car accidents in 2005 and 2009. (AR 316.) On or about

11  June 23, 2020, Plaintiff filed an application for supplemental security income ("SSI") under

12  the Social Security Act. (AR 17, 621.) Plaintiff alleged that she had been disabled since

13  January 5, 2009, due to issues with her lower back, upper spine, memory and brain damage,

14  right leg being shorter than her left leg, and hip replacement. (AR 67, 231, 235.) Plaintiff's

15  applications were denied on initial review and again on reconsideration. (AR 111-15, 124-

16  29.) An administrative hearing was conducted on September 28, 2023, by Administrative

17  Law Judge ("ALJ") Yvette Diamond. (AR 33.) During the administrative hearing, Plaintiff

18  amended her alleged onset date to August 6, 2021. (AR 35-36.) On November 1, 2023, the

19  ALJ issued a decision and concluded that Plaintiff was not disabled from June 23, 2020,

20  the filing date of the application, through the date of the decision. (AR 17-28.) Plaintiff

21  requested a review of the ALJ's decision; the Appeals Council denied the request on June

22  18, 2024. (AR 1-6.) Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

---

[2]     "AR" refers to the Administrative Record filed on October 15, 2024. (ECF No. 8.)
The Court's citations to the AR use the page references on the original document rather
than the page numbers designated by the Court's Case Management/Electronic Case Filing
system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers
affixed by CM/ECF.

**B.**  **ALJ's Decision**

In SSI cases, the Commissioner employs a five-step analysis outlined in 20 C.F.R. § 416.920 in rendering a decision on a claimant's claim. *See* 20 C.F.R. § 416.920; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps). In this case, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 23, 2020, the filing date of her application. (AR 19.) At step two, the ALJ found that Plaintiff's severe impairments consisted of degenerative disc disease, osteoarthritis, status post right ankle fracture, status post brain injury, and anxiety disorder. (*Id.*) The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 20.) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform:

> [L]ight work as defined in [20 C.F.R. § 416.967(b)], except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six of eight hours; and sit for six of eight hours. The claimant can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl but cannot climb ladders. She can frequently reach, handle, finger, and feel but only occasionally reach overhead and below the knees. The claimant requires the option to stand for thirty minutes and then sit for five minutes as needed throughout the day while remaining on task. She cannot have concentrated exposure to temperature extremes, vibration, or hazards. The claimant can perform simple, routine tasks that are not fast-paced and that have no strict production demands. She can have occasional contact with supervisors, coworkers, and the public. The claimant can perform low stress work, which is defined as occasional decisionmaking and occasional changes in work setting.

(AR 23.)

At step four, the ALJ found that Plaintiff had no past relevant work. (AR 27.) The ALJ determined at step five that Plaintiff could perform the requirements of the representative occupations of mail clerk, housekeeper, and office helper. (AR 28.) Therefore, the ALJ concluded that Plaintiff had not been under a disability from June 23, 2020, through the date of the decision. (*Id.*)

**C.**    **Disputed Issues**

Plaintiff asserts three grounds for remand: (1) the ALJ erred in assessing the medical opinion of Juliane Tran, M.D., a consultative examiner, and the prior administrative medical finding by D. Subin, M.D., a state agency physician; (2) the ALJ's evaluation of her testimony was not supported by clear and convincing reasons; and (3) the ALJ's step five finding was not supported by substantial evidence. (ECF No. 11 at 17-29.)

## II.    LEGAL STANDARDS

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited, however, and a decision denying benefits will be set aside "only if it is not supported by substantial evidence or is based on legal error." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (citations omitted). Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for . . . evidentiary sufficiency [under the substantial evidence standard] is not high."). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The district court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). The matter may also be remanded to the Social Security Administration ("SSA") for further proceedings. *Id.*

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   DISCUSSION

### A.   ALJ's Evaluation of Dr. Tran's and Dr. Subin's Medical Opinions

Plaintiff's first argument is that the ALJ erred by finding the opinion of Dr. Tran and the prior administrative medical finding ("PAMF") by Dr. Subin to be "not persuasive." (ECF No. 11 at 17-22.) She contends that the ALJ failed to consider Dr. Tran's explanations supporting her conclusions while selectively addressing normal objective findings. (*Id.* at 18.) Plaintiff further argues that the ALJ erred when assessing the consistency of Drs. Tran's and Subin's assessments with the record as a whole. (*Id.* at 21.) The Commissioner counters that substantial evidence supports the ALJ's evaluation of these opinions. (ECF No. 13 at 2-4.) The Court concurs with Plaintiff.

#### 1.   Applicable standards

The SSA's revised 2017 regulations apply to Plaintiff because she filed her claim after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416); 20 C.F.R. § 416.920c. Under the new regulations, an ALJ is required to evaluate medical opinions and PAMFs (i.e., opinions by state agency medical consultants) by assessing their "persuasiveness." *See* 20 C.F.R. § 416.920c(a). In determining how "persuasive" a medical source's opinions are, the "most important factors" are supportability and consistency. *Id.*; *see also id.* § 416.920c(b)(2). "Supportability" is the extent to which a medical source supports their opinion with relevant objective medical evidence and supporting explanations. *Id.* § 416.920c(c)(1). "Consistency" is the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2). The ALJ's decision must contain an explanation of how the ALJ considered the supportability and consistency factors. *Id.* § 416.920c(c)(2). The ALJ is also required to consider the treatment or examining relationship, specialization, and other factors, but his or her decision need not contain an explanation of how these factors were considered. *Id.* § 416.920c(b)(2), (c)(1)-(5); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir.

1    2022). The ALJ's explanation of the persuasiveness of a medical opinion must be

2    supported by substantial evidence. *Woods*, 32 F.4th at 792.

3        **2.    Dr. Tran's opinion**

4        Dr. Tran conducted a comprehensive orthopedic evaluation of Plaintiff on December

5    22, 2020. (AR 316-22.) Plaintiff recounted her history of two serious motor vehicle

6    accidents during the evaluation. She stated that in 2005, she was hit by a car while working,

7    sustained a brain injury, and was in a coma for over two weeks. (AR 316.) She received

8    traumatic brain injury rehabilitation for approximately two years following the accident.

9    (*Id.*) Plaintiff also stated that in 2009, she was involved in a car accident as a passenger and

10   was ejected from the vehicle. (*Id.*) She was hospitalized for two months, sustained another

11   brain injury, and underwent multiple surgeries, including open reduction internal fixation

12   surgery of her right tibia and fibula, total hip replacement, and abdominal surgery. (*Id.*)

13   Plaintiff was also supposed to undergo cervical spine surgery due to a spinal fracture at

14   C1-C7, necessitating the wearing of a halo device, but the surgery was deferred.[3]

15       Dr. Tran's impressions consisted of: (1) status post brain injury times two; (2) history

16   of cervical spine fracture; (3) possible cognitive deficits; and (4) status post right ankle

17   fracture and right ankle posttraumatic degenerative joint disease status post right tibia

18   surgery. (AR 321.) With respect to Plaintiff's two previous brain injuries, Dr. Tran noted

19   that Plaintiff had findings of reduced coordination of the bilateral upper extremities, on the

20   left more than right, "with residual mildly reduced balance and residual weakness of

21   bilateral upper extremities." (*Id.*) The doctor explained that it was difficult to determine

22   whether Plaintiff's bilateral upper extremity weakness was due to cervical spondylosis-

23   cervical myelopathy or traumatic brain injury. (*Id.*) She opined that the weakness was likely

24   due to multiple factors. (*Id.*) Dr. Tran further noted that while she did not perform a formal

25

26   _____

27   [3]    Dr. Tran noted that it was difficult to determine the reason for the deferral of
     Plaintiff's cervical spine surgery because Plaintiff was a "poor historian." (AR 316-17.)

28

mental status examination, Plaintiff appeared to have some cognitive deficits. (*Id.*) As to Plaintiff's right ankle and right tibia, Dr. Tran indicated that Plaintiff had minimally reduced range of motion in her right ankle, a mild deformity at the right distal tibia, and a mildly abnormal gait. (*Id.*)

Dr. Tran's functional assessment, in relevant part, was that Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently "due to the weakness of bilateral hands and reduced balance," could stand and/or walk for at least two hours in an eight-hour workday, did not have a sitting limitation, and did not require an assistive device. (AR 322.) She opined that Plaintiff should not drive due to her bilateral hand weakness, reduced balance, and cognitive deficit. (*Id.*)

### 3. Dr. Subin's prior administrative medical finding

Dr. Subin, the state agency physician who reviewed Plaintiff's initial claim, proffered an opinion regarding Plaintiff's RFC that closely followed Dr. Tran's functional assessment. (AR 78-79.) Dr. Subin opined, in relevant part, that Plaintiff could lift and/or carry ten pounds occasionally and ten pounds frequently, stand and/or walk for slightly less than two hours, and sit for six hours in an eight-hour workday. (*Id.*)

### 4. ALJ's finding

The ALJ found the opinions of Drs. Tran and Subin to be "not persuasive." She reasoned:

> These examiners opined that the claimant can lift and/or carry ten pounds, stand and/or walk for two of eight hours, and sit for six of eight hours with other postural and environmental limitations. These are not persuasive. They are not supported by the state examiners' own review of the record, noting that the claimant was able to heel and toe walk during the consultative examination with negative straight leg raise testing. They are also not supported by the claimant exhibiting normal lumbar range of motion during the consultative examination with negative Faber testing. They are also not consistent with the recent records in 2023 where the claimant exhibited full shoulder range of motion with good movement in all her extremities. Finally,

they are no[t] consistent with the claimant reporting in 2023 that she was not using an assistive device.

(AR 26 (citing Exhibits 1A/8 (AR 73), 3A/7-8 (AR 96-97), 4F/6 (AR 319), 6F/10 (AR 338), 6F/7 (AR 335)).)[4]

### 5.    Analysis

#### a.    Supportability

As set forth above, "supportability" is the extent to which a medical source supports their opinion with relevant objective medical evidence and supporting explanations. 20 C.F.R. § 416.920c(c)(1). Here, the ALJ relied solely on various normal objective findings in determining that Dr. Tran's and Dr. Subin's opinions were not supported. Specifically, the ALJ noted that Plaintiff was able to heel and toe walk, had a negative straight leg test, had normal range of motion in her lumbar spine, and had a negative FABER test. (AR 26.) Based on the Court's review of the record, however, this constitutes an impermissible cherry-picking of the evidence. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding that the ALJ improperly cherry-picked an examining doctor's observations instead

---

[4]    In this same paragraph, the ALJ also stated that she found the opinion of M. Adamo, M.D., the state agency physician who reviewed Plaintiff's claim on reconsideration, not persuasive, but she erroneously indicated that Dr. Amado found that Plaintiff could lift and/or carry ten pounds, stand and/or walk for two of eight hours, and six for six of eight hours. (AR 26.) Dr. Amado actually found that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (AR 101.) The ALJ adopted Dr. Amado's functional assessment in her decision and thus her determination that this doctor's opinion was not persuasive was error. (*See* AR 23 (setting forth ALJ's formulation of Plaintiff's RFC).) However, because the error was inconsequential to the ALJ's ultimate decision, it was harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("harmless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination") (internal quotation marks and citation omitted).

1   of considering them in the context of the doctor's diagnoses and observations of
2   impairment). For example, the straight leg test is used to assess lumbosacral nerve root
3   irritation[5], the FABER (Flexion ABduction External Rotation) test is used to detect hip,
4   lumbar spine, or sacroiliac joint pathology[6], and normal lumbar range of motion relates to
5   a person's movement in the lower back. The Court is unable to discern how these findings
6   render Dr. Tran's opinion unsupported. And while the record does reflect that Plaintiff
7   could heel and toe walk, it also reflects the abnormal finding of reduced balance with
8   tandem walking. (AR 317.)

9       Dr. Tran was aware of the normal objective findings cited by the ALJ, as they arose
10  during her physical examination of Plaintiff, (*see* AR 317, 319-20), and rendered her
11  opinion despite those findings as her examination also yielded abnormal findings, which
12  was not addressed by the ALJ. (*See* AR 317-18, 320-21 (reflecting tandem walking at a
13  slow pace with mildly reduced balance, decreased cervical range of motion, reduced
14  coordination in Plaintiff's bilateral upper extremities, and weakness in the bilateral upper
15  extremities). "ALJs must review the whole record; they cannot cherry-pick evidence to
16  support their findings." *Bostwick v. Colvin*, Case No. 13cv1936-LAB (MDD), 2015 WL
17  12532350, at *2 (S.D. Cal. Mar. 30, 2015) (citing *Holohan v. Massanari*, 246 F.3d 1195,
18  1207 (9th Cir. 2001)); *see also* 20 C.F.R. § 416.929(a) (providing that the ALJ is required
19  to consider *all* available evidence, including medical history, medical signs, laboratory
20  findings, and claimant's statements about the effect of her symptoms). The ALJ's cherry-
21  picking of the evidence undercuts her supportability determination.

22
23
24  _____

25  [5]    *See* Nat'l Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK539717/
26  [https://perma.cc/MQA6-99QL] (last visited May 16, 2025).
27  [6]    *See* Nat'l Library of Medicine, https://pmc.ncbi.nlm.nih.gov/articles/PMC5159634/
    [https://perma.cc/Q5FA-N86Q] (last visited May 16, 2025).
28

24-cv-1461-W-SBC

1    Furthermore, and more importantly, "supportability" refers not only to the extent to

2   which a medical opinion is supported by relevant objective evidence, but also the extent to

3   which a medical source provides relevant supporting explanations to support their opinion.

4   *See* 20 C.F.R. § 416.1520c(c)(1). Dr. Tran, who is board certified in physical medicine and

5   rehabilitation, provided a detailed explanation for her impressions and functional

6   assessment after completing a thorough physical examination. (AR 317-22.) She explained

7   that her basis for finding that Plaintiff could lift and/or carry ten pounds occasionally and

8   less than ten pounds frequently was "due to the weakness of [Plaintiff's] bilateral hands

9   and reduced balance." (AR 322.) The doctor elaborated that it was difficult to determine

10  whether Plaintiff's bilateral upper extremity weakness was caused by her cervical spine

11  impairments or traumatic brain injury and was likely due to a combination of reasons. (*Id.*)

12  She opined that Plaintiff should never drive due to her bilateral hand weakness, reduced

13  balance, and cognitive deficit. (*Id.*)

14    The ALJ neglected to discuss Dr. Tran's supporting explanation in her decision, (*see*

15  AR 26), and did not explain how the evidence she cited in finding Dr. Tran's opinion

16  unsupported (i.e., Plaintiff's negative straight leg test, normal lumbar range of motion,

17  negative FABER testing), is germane to Plaintiff's upper extremity weakness and mildly

18  reduced balance, which served as the primary bases for Dr. Tran's functional assessment.

19  The Court additionally notes that under the SSA's regulations, the medical opinion of a

20  medical source who has received advanced education and training to become a specialist

21  may be more persuasive about medical issues related to her area of specialty than the

22  medical opinion of a medical source who is not a specialist in the relevant area of specialty.

23  *See* 20 C.F.R. § 416.920c(c)(4). While the ALJ was not required to articulate how she

24  evaluated Dr. Tran's status as a board-certified specialist in physical medicine and

25  rehabilitation, she was required to consider it (*see* 20 C.F.R. § 416.920(a)), and the Court

26  is unable to discern from the ALJ's decision that she did so.

27

28

1    In sum, the ALJ failed to adequately consider the supportability factor of the

2  opinions of both Dr. Tran and Dr. Subin, whose opinion regarding Plaintiff's lifting and

3  carrying, standing and walking, and sitting abilities closely followed Dr. Tran's functional

4  assessment. (AR 78-79.)

5         **b.    Consistency**

6         "Consistency" is the extent to which a medical opinion is consistent with evidence

7  from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2). The ALJ found

8  that Dr. Tran's and Dr. Subin's opinions were inconsistent with other evidence in the

9  record. (AR 26.) Specifically, the ALJ noted that recent records from 2023 reflected that

10  Plaintiff exhibited full shoulder range of motion with good movement in all her extremities

11  and that she was not using an assistive device. (AR 26 (citing AR 335, 338).) Substantial

12  evidence does not support the ALJ's finding of inconsistency. Although one of the medical

13  records cited by the ALJ, a treatment note dated August 3, 2023, indicates that Plaintiff

14  had full range of motion in her shoulders, (*see* AR 338), it is not clear to the Court that this

15  finding, observed by Plaintiff's pain management specialist who was treating Plaintiff for

16  low back, bilateral shoulder, and right wrist pain, had any bearing on or was inconsistent

17  with Dr. Tran's findings, which were made in the context of Plaintiff's previous brain

18  injuries. (*Compare* AR 338 *with* AR 321-22.) Additionally, the ALJ's determination that

19  Dr. Tran's and Dr. Subin's opinions were inconsistent with Plaintiff's 2023 records

20  reflecting that she did not use an assistive device, (*see* AR 335), does not comport with the

21  record because Plaintiff was also not using an assistive device during her examination with

22  Dr. Tran (*see* AR 317.)

23         Based on the foregoing, the Court finds that the ALJ's determination that Dr. Tran's

24  and Dr. Subin's opinions were not persuasive is not supported by substantial evidence. *See*

25  *Woods*, 32 F.4th at 792 (providing that an ALJ cannot discredit a medical source's opinion

26  as unsupported or inconsistent without providing an explanation supported by substantial

27  evidence).

28

24-cv-1461-W-SBC

1

**B.    ALJ's Evaluation of Subjective Symptom Testimony**

Plaintiff's second contention is that the ALJ failed to articulate clear and convincing reasons to reject her subjective limitations. (ECF No. 13 at 22-26.) The Court agrees.

### 1.    Applicable standards

It is up to the ALJ "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ engages in a two-step analysis to determine the extent to which a claimant's report of symptoms must be credited. First, the ALJ must decide whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 416.929(b). Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the ability to perform work-related activities. SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 416.929(c). When the ALJ finds that a claimant is not malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15; *see also Lambert*, 980 F.3d at 1277; *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert*, 980 F.3d at 1277 (citing *Treichler*, 775 F.3d at 1102).

### 2.    Plaintiff's subjective symptom testimony

At the administrative hearing, Plaintiff testified that she had not worked since before 2005 and had not applied for any jobs because she had not been "able to either stand or sit

or I've been in a lot of pain." (AR 40-41.)[7] She saw her primary care provider about every six weeks and was receiving trigger point injections from an orthopedist. (AR 42-43.) The only medication she was taking was hepatitis C medication. (AR 44.) She was waiting to see another orthopedic doctor for her ankle and lower back. (*Id.*) Plaintiff testified that she could perform household chores only "[a] little at a time" and could not vacuum or sweep as doing so hurt her lower back. (AR 46-47.) She was able to prepare simple foods and could go to the grocery store. (AR 47.) For exercise, she walked about a block at a time and then rested. (AR 48.) Socially, she spent time watching television with friends or going to their houses. (AR 49.) She was able to read on her phone up to four hours a day and went to the library about three times a month, where she read books and socialized. (AR 50-51.) She stated that she could lift about ten pounds. (AR 51.) When grocery shopping, she was able to lean on the cart and shop for half an hour before needing to stop and rest for five minutes. (AR 52-53.) She estimated that she could stand or walk for fifteen minutes before needing to sit down and could sit for fifteen minutes before needing to get up. (*Id.*)

### 3.    ALJ's findings

The ALJ determined that Plaintiff satisfied step one of the two-step analysis. (AR 24.) At the second step, the ALJ stated, "As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of her symptoms, they are not entirely consistent with the objective medical evidence, the claimant's longitudinal medical history, and some of the claimant's own endorsements." (*Id.*) She explained:

---

[7]    Plaintiff also testified that she had recently been incarcerated. (AR 41-42; *see also* AR 71 (recounting a telephone call with the SSA on July 28, 2020, during which "[Claimant] stated that she was incarcerated for the past year at [Geo] Jail, a Federal Jail in San Diego."); AR 310 (reflecting Plaintiff's report to Dr. Jessica Durr, the psychological evaluator, that she had a history of six to seven arrests for trafficking and drug possession, had been incarcerated for three years total, and most recently had been arrested for drug smuggling in 2019).)

1

2

3

4

5

> Specifically, while the claimant testified that she can only lift ten pounds, she wrote in her function report that she was able to lift twenty pounds. She reported in 2023 that she was able to walk without an assistive device with full range of motion despite pain. Additionally, she ambulated independently and demonstrated full strength in her bilateral upper and lower extremities in 2023. Further, despite her history of brain injury, she demonstrated low average cognitive functioning during the consultative examination.

6

7

(AR 24 (citations omitted); *see also* AR 26-27 (repeating the above) (citations omitted).)

8

She continued:

9

10

11

12

> Turning to the claimant's medical treatment and activities of daily living, the claimant testified that she was taking pain medication during the relevant period. Regarding her activities of daily living, the claimant testified that she is able to perform light household chores, do some laundry, make simple meals, go to the grocery store and push a cart for thirty minutes, and go to the library. She also testified that she will sometimes go on walks.

13

(AR 24.)

14

15

16

As will be discussed below, the ALJ failed to set forth specific, clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's pain testimony.

17

18

    **4.**    **Analysis**

19

    **a.**    **Inconsistency between hearing testimony and function report**

20

21

22

23

24

25

26

In her Adult Function Report completed on August 4, 2020, Plaintiff wrote that she could lift twenty pounds. (AR 246, 248.) During her hearing testimony on September 28, 2023, Plaintiff stated, in response to the ALJ's question, "How many pounds have you been able to lift for the last two years?" that she could lift ten pounds. (AR 51.) The ALJ, noting that Plaintiff had indicated that she could lift twenty pounds in her function report, asked about the discrepancy. (AR 51-52.) Plaintiff explained, "Maybe that's when I was younger . . . [s]ince I've been getting older, I've noticed . . . I've gotten weaker and I would say it's

27

28

changed in the past two years, three years." (AR 52.) She continued, "It's pretty hard to determine how much something weighs when you're lifting it." (*Id.*)

In her decision, the ALJ did not discuss Plaintiff's explanation in finding that this apparent inconsistency between the function report and hearing testimony negatively affected Plaintiff's credibility, and also disregarded that her own question during the hearing called for the amount Plaintiff could lift for *the past two years* whereas the function report had been completed over three years prior to the hearing. (AR 51, 248.) The inconsistency between Plaintiff's statements, given three years apart, regarding the amount she could lift does not have the "power to convince" the Court that this was a reasonable basis for finding Plaintiff's symptom testimony not believable. *See Smartt*, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."). Thus, this did not constitute a clear and convincing reason to discount Plaintiff's testimony.

### b.    Ability to walk without an assistive device

The ALJ's next reason for discounting Plaintiff's subjective symptom testimony was that Plaintiff "reported in 2023 that she was able to walk without an assistive device with full range of motion despite pain." (AR 24 (citing AR 335); *see also* AR 26 (citing AR 335).) Plaintiff argues that the ALJ did not explain how this report was inconsistent with her testimony that she was limited in her ability to stand and walk. (ECF No. 11 at 24.) The Commissioner contends that Plaintiff's testimony that she needed to lean on a shopping cart and rest after shopping was undermined by her medical records in which Plaintiff did not report or demonstrate the need for an assistive device. (ECF No. 13 at 5.)

Plaintiff's reported ability to walk without an assistive device does not constitute a specific, clear, and convincing reason to discount her testimony. First, other than stating that she needs to lean on a shopping cart while grocery shopping, the record does not reflect that Plaintiff ever claimed to require an assistive device. Second, the ALJ's statement on this topic is convoluted and mischaracterizes the evidence. The medical record cited by the

ALJ does not indicate that Plaintiff was "able to walk without an assistive device with full range of motion despite pain," as the ALJ claims. (*See* AR 24.) Rather, the treatment note cited by the ALJ is of a telemedicine visit on September 5, 2023, in which Plaintiff reported simply that "she does not use [an] assistive device for ambulation." (AR 335.) The reference to "range of motion" does not refer to Plaintiff's ability to walk but rather to Plaintiff's ability to complete range of motion of her extremities without difficulty. (*Id.*) Third, the Commissioner's interpretation of the ALJ's statement—that Plaintiff reporting the lack of the need of an assistive device to her medical provider conflicted with her hearing testimony that she leans on a grocery cart—is not explicitly set forth in the ALJ's decision and appears to be an impermissible post hoc rationale. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts.") (citation omitted).

The Court finds that Plaintiff's ability to walk without an assistive device is neither a clear nor convincing reason to discount Plaintiff's subjective symptom testimony.

### c.    Full strength in bilateral upper and lower extremities

Next, the ALJ discounted Plaintiff's subjective symptom testimony because she found it was inconsistent with the objective medical evidence, including that Plaintiff "demonstrated full strength in her bilateral upper and lower extremities in 2023." (AR 24, citing AR 338.) This statement refers to a treatment note dated August 3, 2023, indicating that on physical examination, Plaintiff showed 5/5 strength in her bilateral upper and lower extremities in all muscle groups. (AR 338.)

Although an ALJ may not disregard a claimant's testimony "solely because it is not substantiated affirmatively by objective medical evidence," (*see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ may consider whether the alleged symptoms are consistent with the medical evidence as one factor in her evaluation. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Here, the ALJ accurately referred to medical evidence in the record to support her finding that Plaintiff demonstrated

24-cv-1461-W-SBC

full strength in her bilateral upper and lower extremities in 2023. Despite this, the Court does not find that this constituted a clear and convincing reason to discount Plaintiff's pain and other subjective symptom allegations because Plaintiff also exhibited abnormal objective findings. For example, Plaintiff's cervical x-rays taken on December 22, 2020, showed straightening of the normal cervical curvature and moderate degenerative disease at C5-6. (AR 315.) Notably, Dr. Tran, the consultative examiner, opined that Plaintiff's history of cervical spine fracture might account for the weakness in Plaintiff's bilateral upper extremities. (AR 321.) During Dr. Tran's physical examination, Plaintiff exhibited reduced coordination in her bilateral upper extremities, mildly reduced balance, and weakness in the bilateral upper extremities. (AR 320-21.) Repeat cervical x-rays taken on March 23, 2023, showed that Plaintiff's moderate multilevel spondylosis had progressed since cervical x-rays taken on April 25, 2019. (AR 342.) Objective evidence also confirmed Plaintiff's reports of prior brain injury, neck fracture, and tibia and fibula fractures following her car accidents. (*See* AR 321 ("There is evidence of a well healed surgical incision at the top of the head in the upper frontal region likely [from] surgery for the previous traumatic brain injury."); AR 342 (cervical x-rays showing "chronic appearing osseous deformity at the dens possibly related to old trauma"); AR 315 (right ankle x-rays revealing "previous fractures in the distal third of the tibia and fibula with internal fixation"). Thus, this is not a case in which the medical evidence contained only normal findings. Rather, the objective medical evidence showed both normal and abnormal findings. The Court finds that the objective medical evidence in the record both supports and detracts from Plaintiff's subjective symptom allegations and thus does not constitute a clear and convincing reason to reject her testimony regarding the severity of her symptoms. *See Lambert*, 980 F.3d at 1277.

### d.    Low average cognitive functioning

The ALJ also discounted Plaintiff's subjective symptom testimony on the basis that "she demonstrated low average cognitive functioning during the consultative

17

examination." (AR 24.) Here, the ALJ is referring to the psychological evaluation performed by Jessica Durr, Ph.D. on October 26, 2020. (AR 308-13.) Dr. Durr conducted a mental status examination and administered the Wechsler Adult Intelligence Scale IV and Wechsler Memory Scale tests. (AR 310-12.) The psychologist indicated that Plaintiff's "overall cognitive ability on testing was in the low average range." (AR 312.) Dr. Durr's opinion related only to Plaintiff's alleged mental impairments and not her physical impairments. (AR 312-13.)

Plaintiff's low average cognitive functioning could constitute a clear and convincing reason for the ALJ to discount her allegations regarding her mental impairments. However, low average cognitive functioning does not, absent further explanation by the ALJ, constitute a reasonable basis for finding Plaintiff's physical symptoms not believable. *See Smartt*, 53 F.4th at 499 (providing that the ALJ's rationale must have the "power to convince" the court); *see also Ferguson*, 95 F.4th at 1200 ("But an exam showing 'no neurological defects' and a 'normal mood,' at best, provides a reason to discount Ferguson's testimony about his neurological deficits and mood."); *see also Bogner v. Comm'r Soc. Sec. Admin.*, No. CV-22-01908-PHX-DMF, 2023 WL 4734120, at *7 (D. Ariz. July 25, 2023) ("Because Plaintiff's symptoms arise . . . not from a cognitive impairment, Plaintiff's intact cognitive functioning is not a clear and convincing reason to discount Plaintiff's symptom testimony.").

### e.    Daily activities

Finally, the ALJ found that Plaintiff's activities of daily living undermined her allegations of work-precluding disability. (AR 24.) The parties disagree on whether the ALJ properly relied on Plaintiff's daily activities to discount her pain allegations. (*See* ECF No. 11 at 24; ECF No. 13 at 6; ECF No. 14 at 9.)

Daily activities may form the basis of an adverse credibility determination when evidence concerning the claimant's daily activities contradicts her testimony, or when the activities meet the threshold for full-time work. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.

2007); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1114 (9th Cir. 2021). "One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Nevertheless, "[e]ven where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations omitted) (superseded on other grounds by 20 C.F.R. § 404.1502(a)); *see also Lingenfelter*, 504 F.3d at 1040 (stating that an ALJ may properly consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms" when assessing credibility).

Here, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff's daily activities were inconsistent with the alleged severity of her limitations. Plaintiff's daily activities, including light household chores, laundry, preparing simple meals, going to the grocery store and pushing a cart for thirty minutes, going to the library, and going on walks are inconsistent with her testimony that she could not work due to pain and an inability "to either stand or sit." (AR 40-41.) For example, regarding her library visits, Plaintiff testified that she goes for two hours at a time and likes to "[r]ead books, look at books, [and] make copies" and socializes by "speak[ing] with people at the library." (AR 51, 55-56.) She also testified that she enjoyed going to the beach for three hours with friends to feed wild birds. (*See* AR 49-50 ("[I]f somebody else calls me and says yeah, let's go to the beach, then I will go.").) She was able to take walks for exercise, though she indicated that she had to stop and rest after going about a block. (AR 48.)

Plaintiff's daily activities constituted a clear and convincing reason to discredit her testimony regarding the functional limitations caused by her symptoms.

///

///

///

24-cv-1461-W-SBC

1

### f.    Summary

2    Although Plaintiff's daily activities constituted a clear and convincing reason to

3    discount her symptom testimony, the remainder of the reasons articulated by the ALJ are

4    not clear and convincing. The ALJ also did not sufficiently identify specific testimony from

5    Plaintiff she found not to be credible and the evidence undermining that testimony. *See*

6    *Lambert*, 980 F.3d at 1277. In sum, the Court finds that the ALJ failed to provide sufficient

7    clear and convincing *reasons* to discount Plaintiff's symptom allegations as required. *See,*

8    *e.g.*, *Garrison*, 759 F.3d at 1014-15.

9    **C.    ALJ's Step Five Determination**

10    Plaintiff next raises multiple issues concerning the ALJ's determination at step five,

11    in which the ALJ relied on vocational expert ("VE") testimony that Plaintiff could perform

12    the representative occupations of housekeeper, mail clerk, and office helper. Plaintiff

13    argues that (1) the VE failed to establish that a person with the need to sit for five minutes

14    every thirty minutes could remain on task and perform 80% of housekeeper jobs, (2) she

15    cannot perform the job of mail clerk, which requires reasoning level three, due to her

16    limitation to "simple, routine tasks," and (3) the office helper job has only 6,800 jobs in

17    the national economy which does not represent a sufficient number of jobs. (ECF No. 11

18    at 26-29.) The Commissioner contends that Plaintiff has waived any challenge to the

19    housekeeper job, and that even if she had preserved her argument for appeal, the ALJ was

20    entitled to rely on the VE's testimony. (ECF No. 13 at 7-9.) The Commissioner concedes

21    that Plaintiff's limitation to simple work precludes her from performing the mail clerk job

22    but argues that the number of national jobs in the economy for the remaining two positions

23    constitutes a significant number of jobs in the national economy. (*Id.* at 9-10.) Thus, the

24    Commissioner asks the Court to affirm the ALJ's findings at step five. (*Id.* at 10.)

25    The Court finds that Plaintiff did not forfeit her challenge to the housekeeper job,

26    and that the ALJ erred by failing to ask the VE to reconcile an apparent or obvious conflict

27    between her testimony and the requirements for the housekeeper job in the Dictionary of

28

1  Occupational Titles ("DOT"). In light of this determination, the ALJ failed to meet her

2  burden to show that Plaintiff can perform work that exists in significant numbers in the

3  national economy.

4        **1.    Applicable standards**

5        At step five in the sequential evaluation, the Commissioner has the burden "to show

6  that the claimant can perform some other work that exists in 'significant numbers' in the

7  national economy, taking into consideration the claimant's residual functional capacity,

8  age, education, and work experience." *Tackett*, 180 F.3d at 1100; *see also* 20 C.F.R. §

9  416.920(g)(1). "In making this determination, the ALJ relies on the DOT, which is the

10 SSA's 'primary source of reliable job information' regarding jobs that exist in the national

11 economy." *Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015) (citations omitted); *see*

12 *also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). In addition to the DOT, the ALJ

13 may obtain VE testimony about specific occupations that a claimant can perform

14 considering the limitations set forth in her RFC. *Zavalin*, 778 F.3d at 846.

15       Occupational evidence provided by a VE should generally be consistent with the

16 occupational information contained in the DOT. *See* SSR 00-4p, 2000 WL 1898704, at *2.

17 If the VE's opinion that the claimant "is able to work conflicts with, or seems to conflict

18 with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile

19 the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v.*

20 *Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4p, 2000 WL 1898704, at *2).

21 "[T]he conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire

22 further." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (citing *Gutierrez*, 844

23 F.3d at 808). The focus of the conflict inquiry is the "essential, integral, or expected" job

24 requirements set forth in the DOT. *Gutierrez*, 844 F.3d at 808.

25 ///

26 ///

27 ///

28

**2.    VE's testimony**

The ALJ in this case asked the VE to consider the following hypothetical:

> For our first hypothetical, please assume an individual who has the physical ability to do the following, with the claimant's age, education, and work experience, and these limitations. Someone who can lift and carry 20 pounds occasionally, 10 pounds frequently, stand or walk for six out of eight hours, sit for six out of eight hours . . . . And someone who is limited to simple, routine tasks that are not fast paced and that have no strict production demands[.]

(AR 59.) The VE responded that such a person could perform the jobs of housekeeper (DOT 323.687-014) (177,000 jobs in the national economy), marker (DOT 209.587-034) (136,000 jobs in the national economy), and mail clerk (DOT 209.687-026) (11,000 jobs in the national economy). (AR 60.) The ALJ continued:

> For a second hypothetical, please assume the following limitation in addition to those in hypothetical #1. Someone who requires the option to change positions between sitting and standing as follows: stand for a half hour and then sit for five minutes as needed throughout the workday while remaining on task.

(*Id.*) The VE testified that the individual could still perform the mail clerk job, with no erosion to the job numbers; the marker position would be replaced with an office helper (DOT 239.567-010) (6,800 jobs in the national economy); and there would be a reduction of 20% in the number of housekeeper jobs, with approximately 140,000 jobs available after the reduction. (AR 60-61.)

The VE further testified, in response to questioning by Plaintiff's hearing counsel, that these jobs would be eliminated if the individual needed to sit and stand for five minutes every thirty minutes at will. (AR 63-64.)

**3.    Housekeeper job**

Plaintiff argues that the VE failed to establish that a person with the need to sit for five minutes every thirty minutes, as set forth in the RFC formulated by the ALJ, could

24-cv-1461-W-SBC

1    remain on task and perform 80% of housekeeper jobs. She contends that unskilled work
2    like housekeeping does not ordinarily have the flexibility of a sit/stand option and that the
3    VE's testimony conflicted with the DOT. (ECF No. 11 at 26-28.)

### a.    Plaintiff's argument not forfeited

5    The Commissioner first responds that "'when claimants are represented by counsel,
6    they must raise all issues and evidence at their administrative hearings in order to preserve
7    them on appeal' or those issues are forfeited." (ECF No. 13 at 8 (citing *Meanel v. Apfel*,
8    172 F.3d 1111, 1115 (9th Cir. 1999)).) In *Meanel*, the Ninth Circuit reasoned that an ALJ,
9    rather than the court, is in the best position to resolve conflicts between a claimant's
10    evidence and statistical evidence provided by a VE. *Meanel*, 172 F.3d at 1115; *see also*
11    *Shaibi v. Berryhill*, 883 F.3d 1102, 1103 (9th Cir. 2017) (holding that a Social Security
12    claimant who wishes to challenge the factual basis of a VE's estimate of the number of
13    available jobs in the economy "must, at a minimum, raise the issue of the accuracy of the
14    expert's estimates at some point during administrative proceedings to preserve the
15    challenge on appeal in federal district court").

16    Here, the Commissioner argues that Plaintiff forfeited her right to challenge the VE's
17    testimony regarding the housekeeper job because she did not challenge the VE's testimony
18    before either the ALJ or the Appeals Council. (ECF No. 13 at 7-8 (citing AR 63-64
19    (plaintiff's counsel's questioning of VE administrative hearing); AR 299-300 (plaintiff's
20    counsel's letter requesting review of the ALJ's decision by the Appeals Council)).) If
21    Plaintiff's argument regarding the availability of housekeeping positions relied solely on
22    "job numbers" evidence, the Court agrees that she would have forfeited this argument on
23    appeal by failing to raise it at the administrative level. *See Shaibi*, 883 F.3d at 1109 (relying
24    on the principle set forth in *Meanel* that "an agency, its experts, and its [ALJs] are better
25    positioned to weigh conflicting evidence than a reviewing court"). But the thrust of
26    Plaintiff's argument here regarding the VE's testimony about the availability of
27    housekeeping jobs relates not to a "job numbers" issue but rather to a conflict between the

28

24-cv-1461-W-SBC

1   VE's testimony and the DOT (*see* ECF No. 11 at 26-28), which does not require the Court

2   to weigh conflicting evidence. "[A]n ALJ is required to investigate and resolve any

3   apparent conflict between the VE's testimony and the DOT, regardless of whether a

4   claimant raises the conflict before the agency." *Shaibi*, 883 F.3d at 1109. Thus, Plaintiff's

5   argument is not forfeited.

### b.   Obvious or apparent conflict

7          In her decision, the ALJ adopted the VE's testimony that Plaintiff could perform the

8   job of housekeeper, of which she stated there were 177,000 jobs existed in the national

9   economy. (AR 27.)[8] The DOT describes the duties of a "Cleaner, Housekeeping" as

10  follows:

> Cleans rooms and halls in commercial establishments, such as hotels,
> restaurants, clubs, beauty parlors, and dormitories, performing any
> combination of following duties: Sorts, counts, folds, marks, or carries linens.
> Makes beds. Replenishes supplies, such as drinking glasses and writing
> supplies. Checks wraps and renders personal assistance to patrons. Moves
> furniture, hangs drapes, and rolls carpets.

*See* DOT 323.687-014, 1991 WL 672783. A housekeeper also performs the duties

described under "Cleaner (any industry) I Master Title." *Id.* A "master title" describes

---

[8]      The ALJ's reference to 177,000 housekeeping jobs in the national economy
represented the full number of such jobs available. (AR 28, 59-60.) But because the ALJ
included a requirement in Plaintiff's RFC that she be permitted to stand for thirty minutes
and then sit for five minutes as needed throughout the day while remaining on task (*see*
AR 23), the ALJ should have reduced the number of available housekeeping jobs that
Plaintiff could perform to 140,000. (AR 60-61 (reflecting VE's testimony that the total
number of housekeeping jobs available, 177,000, would be reduced by 20%, to
approximately 140,000, for a person who needed to sit for five minutes every thirty
minutes).) Because 140,000 jobs constitute a significant number of jobs in the national
economy, however, this error, on its own, is harmless. *See Gutierrez v. Comm'r Soc. Sec.*,
740 F.3d 519, 528-29 (9th Cir. 2014) (upholding ALJ's finding that 25,000 jobs constituted
a significant number of jobs in the national economy).

1   "work duties that are common or potentially common to a number of jobs." *See* DOT,

2   Master Titles and Definitions, Cleaner I, 1991 WL 645969. The master definition for a

3   "Cleaner I" is:

> Maintains premises of commercial, institutional, or industrial establishments, office buildings, hotels and motels, apartment houses, retirement homes, nursing homes, hospitals, schools, or similar establishments in clean and orderly condition, performing the following duties: Cleans rooms, hallways, lobbies, lounges, rest rooms, corridors, elevators, stairways, and locker rooms and other work areas. Sweeps, scrubs, waxes, and polishes floors, using brooms and mops and powered scrubbing and waxing machines. Cleans rugs, carpets, upholstered furniture, and draperies, using vacuum cleaner. Dusts furniture and equipment. Polishes metalwork, such as fixtures and fittings. Washes walls, ceiling, and woodwork. Washes windows, door panels, and sills. Empties wastebaskets, and empties and cleans ashtrays. Transports trash and waste to disposal area. Replenishes bathroom supplies. Replaces light bulbs.

14  (*Id.*)

15   Plaintiff maintains that the ALJ should have asked the VE to give a clear explanation

16   for reducing the number of housekeeping jobs with a sit/stand option by only 20% as a

17   conflict existed between the VE's testimony and the description of the housekeeping job

18   in the DOT. (ECF No. 11 at 27-28.) The Court agrees. When the VE's "opinion that the

19   applicant is able to work conflicts with, or seems to conflict with, the requirements listed

20   in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on

21   the expert to decide if the claimant is disabled." *Gutierrez*, 844 F.3d at 807 (citing SSR 00-

22   4p, 2000 WL 1898704, at *2). In this case, after the VE testified that Plaintiff could perform

23   the jobs of housekeeper, office helper, and mail clerk, the ALJ asked the expert whether

24   her testimony was consistent with the DOT and Selected Characteristics of Occupations.

25   (AR 62.) She replied, "Yes, Your Honor, to the extent that it can be." (*Id.*) She explained

26   that the DOT does not discuss sit/stand options, and that that portion of her testimony was

27   based on her professional experience, education, and training. (*Id.*)

1     An ALJ is not absolved of the duty to reconcile conflicts merely because a VE

2 responds yes when asked if her testimony is consistent with the DOT. *Lamear*, 865 F.3d at

3 1205 n.3 (citing *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014)). If a conflict is

4 "obvious or apparent," this triggers the ALJ's obligation to inquire further. *Id.* at 1205.

5 Again, the focus of the conflict inquiry is the "essential, integral, or expected" job

6 requirements set forth in the DOT. *Gutierrez*, 844 F.3d at 808. Here, the "essential, integral,

7 or expected" tasks in the DOT definition of the housekeeper job, which encompasses the

8 duties of a cleaner I, include maintaining the premises of commercial, institutional, or

9 industrial establishments, such as office buildings, hotels, motels, and the like; cleaning

10 multiple rooms and work areas, including hallways, lobbies, lounges, and restrooms;

11 sorting and carrying linens; making beds; sweeping and mopping floors; vacuuming floors

12 and furniture; dusting; and polishing. *See* DOT, Master Titles and Definitions, Cleaner I,

13 1991 WL 645969; DOT 323.687-014, 1991 WL 672783. These tasks present an "obvious

14 or apparent" conflict with Plaintiff's requirement that she sit for five minutes every thirty

15 minutes. Based on common sense and real-world experience, it is likely and foreseeable

16 that a housekeeper would have to stand and/or walk to complete the majority of these tasks

17 and would be unable to sit for five minutes every thirty minutes. *See Gutierrez*, 844 F.3d

18 at 808 (applying common experience to evaluation of DOT job description); *Lamear*, 865

19 F.3d at 1205-06 (same).[9] Given the VE's testimony that the housekeeper job would be

20

21

22     [9]     The Ninth Circuit has not addressed in a published decision the question of whether

23 an apparent conflict with the DOT arises when the DOT is silent as to a particular mental

or physical requirement. Unpublished decisions go both ways. *Compare Dewey v. Colvin*,

24 650 F. App'x 512, 514 (9th Cir. 2016) (finding no conflict between sit/stand option and

25 DOT because "the DOT is silent on whether the jobs in question allow for a sit/stand

option") *with Coleman v. Astrue*, 423 F. App'x 754, 756 (9th Cir. 2011) (finding an

26 apparent conflict between VE testimony and the DOT where the claimant needed to

27 alternate sitting, standing, and walking on an hourly basis, and the VE testified that the

claimant could perform certain sedentary and light occupations which, according to the

28

eliminated if an individual needed to sit and stand for five minutes every thirty minutes at will, (*see* AR 63-64), it was particularly important for the ALJ to resolve this conflict.

Because there was an obvious or apparent conflict between the VE's testimony and the DOT description of the housekeeper position, the ALJ was required to question the VE about how Plaintiff could perform this job in light of the requirement in her RFC that she sit for five minutes every thirty minutes. *See* SSR 00-4p, 2000 WL 1898704, at *4. The ALJ must then explain in her decision how she resolved the conflict. *Id.* "The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *see also Zavalin*, 778 F.3d at 846 ("The ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence.").

In this case, the ALJ erred by failing to ask the VE about the conflict between her testimony that Plaintiff could perform 80% of housekeeping jobs and the DOT's description of the job duties for this position. Without this inquiry, the Court cannot determine from the record whether the ALJ's decision is supported by substantial evidence. Thus, the error is not harmless. *See Tommasetti*, 533 F.3d at 1038.

*///*

---

DOT, involve sitting most of the time or walking or standing to a significant degree), and *Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628-29 (9th Cir. 2011) (finding "conflict" between at-will sit/stand option and DOT was adequately addressed by VE based on VE's own research and experience). District courts in the Ninth Circuit are divided on this issue. *See Wester v. Colvin*, Case No. SACV 14-1212-JPR, 2015 WL 4608139, *5 (C.D. Cal. July 31, 2015) (collecting cases). This Court believes a case-by-case approach is appropriate. *See id.* ("[W]hen a VE relies on a functional limitation about which the DOT is silent or unclear, a conflict may exist depending upon the circumstances of the case.").

1

### 4. Mail clerk job

2

The Commissioner concedes that because Plaintiff's RFC limited her to "simple,

3    routine tasks," she could not perform the job of mail clerk, which requires Level 3

4    reasoning. (*See* ECF No. 13 at 9-10 (citing *Zavalin*, 778 F.3d at 847 and *Rounds v. Comm'r*,

5    807 F.3d 996, 1003 (9th Cir. 2015)).) The ALJ's reliance on this job at step five was error.

6

### 5. Office helper job

7

Plaintiff concedes that the office helper job supports the ALJ's step five

8    determination. (ECF No. 11 at 29.) She argues, however, that with only 6,800 jobs

9    nationally, it is insufficient on its own to constitute a significant number of jobs in the

10   national economy. (*Id.*) Plaintiff is correct.

11

The Ninth Circuit has not created a "bright-line rule" for what constitutes a

12   "significant number" of jobs. *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

13   However, "a comparison to other cases is instructive." *Id.* Plaintiff cites to *Gutierrez v.*

14   *Comm'r Soc. Sec.*, 740 F.3d 519 (9th Cir. 2014), to support her argument. In *Gutierrez*, the

15   Ninth Circuit upheld the ALJ's finding that 25,000 jobs constituted a sufficient number but

16   stated that it was a "close call." *Id.* at 529. The Ninth Circuit provided further guidance in

17   *Randazzo v. Berryhill*, 725 F. App'x 446 (9th Cir. 2017). There, the circuit court

18   determined that "the remaining 10,000 electrical accessories assembler jobs found by the

19   expert may not amount to a significant number of jobs in the national economy." *Id.* at 448;

20   *see also De Rivera v. Berryhill*, 710 F. App'x 768, 769 (9th Cir. 2018) ("it is not clear that

21   [5,000 national jobs] are sufficient.").

22

In the case at hand, after discounting the housekeeper and mail clerk occupations,

23   the remaining 6,800 office helper jobs available in the national economy is not a sufficient

24   number to support the ALJ's Step 5 determination.

25   ## D. **Remedy**

26

Plaintiff requests that the Court reverse the Commissioner's decision and find her

27   disabled. (ECF No. 11 at 29.) She requests in the alternative that the Court remand for

28

24-cv-1461-W-SBC

additional proceedings. (*Id.*) The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); *Treichler*, 775 F.3d at 1099. A remand for an immediate award of benefits is appropriate only in rare circumstances. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981*); see also Garrison*, 759 F.3d at 1019.

The evidence in this case does not conclusively establish that Plaintiff is disabled under the Social Security disability regulations. Rather, the evidence must still be evaluated properly. Additional proceedings can remedy the defects in the ALJ's decision. Accordingly, remand for additional proceedings is appropriate.

## IV.    CONCLUSION

For the reasons stated above, the Court recommends that the final decision of the Commissioner be **REVERSED**, and the case **REMANDED** for further proceedings consistent with this opinion.

This Report and Recommendation will be submitted to the Honorable Thomas J. Whelan, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **June 6, 2025**. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before **June 13, 2025**. The parties are advised that failure to file objections within the specified

///

///

///

///

///

29

time may waive the right to appeal the district court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

Dated:  May 23, 2025

Hon. Steve B. Chu
United States Magistrate Judge